Clerk, please call the first case. 312-195, Johnson Contracting Company v. Joseph Zippins Counsel, you may proceed. May I proceed? Yes, you may. Good morning, Your Honors. I may please the Court. My name is Andrew Thomas, and I represent the Appellant Employer, Johnson Contracting Company. At this time, I'd like to request three minutes for rebuttal. Thank you. Your Honors, this is a case where the Petitioner, excuse me, the claimant, was provided with the rules or the rules, the training, and the tools to properly perform his job duties in accord with his employer's expectations, yet determined on his own volition to carry out his job duties in a manner that was entirely inconsistent with his employer's expectations, resulting in an injury that occurred in his very own driveway. Let me ask you a question. Did the employer, did you ever introduce or submit any written policy that specifically addressed this alleged prohibitive conduct? No, Your Honor. It was officially frowned upon, according to Kerry Cox. And furthermore, the courts of this State have held that the employer need not propose a written formal policy in order to, for the court to determine that such a policy existed. Although the claimant testified that the unneeded materials are removed is customary, right? Didn't he testify to that? He did, Your Honor. And I will address that in one moment. This Court should reverse the decision of the Circuit Court of Knox County for the following three reasons. One, the act of misappropriating or removing company property from his company vehicle was not customary. It was not reasonable, nor was it foreseeable. The Circuit Court's consideration was not reasonable.   So the question is, did the employer know that he was misappropriating? Yes, that was my question. Is there any evidence he was using it for his own purposes? He was taking it and using it for personal use? His testimony was that because of the trip he was taking, he unloaded it. There's no evidence of misappropriation, was there? Well, Your Honor, he did testify that he understood and was aware that all company property belonged to the company and that it was only to be unloaded, not only, it was to be unloaded at a shop in Moline, Illinois. He further demonstrated an ability and an understanding of his training, in that he was able to successfully secure those pipes to the top of his vehicle, as was his company's protocol, safely and securely all the way from his previous job at the Los Santos plant to his home in Kewaunee, Illinois, which is a trip of over an hour. Moreover, he left the pipes there for over the weekend without any attention to this alleged safety reason. Was he disciplined for this misappropriating? No, Your Honor. But I do not believe that any action by the employer and the employee following the accident should be considered, much like a products liability case. Furthermore, after the accident, Your Honor, where the claimant has suffered a cervical injury, the first thing on the respondent's mind, excuse me, the employer's mind, is not discipline of the employee. The employee had a good standing record, and the court should not step into the shoes of the employer and instruct them how they should treat their employees following an incident like this. The fact of the matter is his compensation claim was denied from the get-go. That should have been evidence enough that they would not agree that his injury arose out of it in the course of his employment. Are you also arguing that this doesn't necessarily bear on the issue of whether or not he's a traveling employee, does it? Isn't that sort of a separate issue? It is, Your Honor. Arbitrator Douglas Holland's decision is a bit unclear as to the grounds upon which he gave his conclusions of law. His decision, Your Honors, simply has findings of facts and then a single statement of what his conclusion is. And therefore, it's a bit confusing, and we're trying to cover all grounds here to ensure that this case is reversed. But with regard to Your Honor's question about the custom and practice, the Petitioner's testimony or the claimant's testimony alone is patently insufficient to establish customary practice according to the laws of the State. Now, the courts have held that there are two ways in which you can establish custom and practice. One is to parade a number of witnesses through who will testify to the same conduct being carried out and the employer's acquiescence and such. Or the claimant in this case could have testified to numerous specific and detailed instances in which the same conduct was carried out and the employer knew of it and acquiesced in it. Wait a minute. What difference does it make? Sorry, Your Honor. It makes no difference at all. He says he took the extra pipe off of the vehicle for safety reasons. Well, let's assume for a minute he's wrong. He didn't need to do it. He's still in furtherance of his employer's business. Your Honor. Unless, of course, we accede to the notion that he stealers himself. Your Honor, respectfully, he's not. Why not? The employer prescribed the manner in which he was supposed to secure these pipes and the safety protocol for securing these pipes to the top of his vehicle. What's your best case that stands for that proposition? I'm sorry, Your Honor. What's your best case that stands for that proposition? For the proposition that if you violate some protocol of the employer, he's out of the scope of his business. Certainly, Your Honor. There's two cases. One is Eugene Dietzen versus the Industrial Commission. And what did he do? In Eugene? The claimant? Yeah. In Dietzen, Your Honor, the claimant was a metal buffer who, after receiving an informal oral instruction from his employer not to reach his hand into a certain exhaust pipe if something should fall into it, went ahead and did so. And as a result of such, he was injured. Now, before the Supreme Court, at arbitration, he argued that he was doing it for the benefit of the employer. The court dismissed it and said that we will not award compensation on the mere plea that what you were doing is for the benefit of the employer. Now, in this case, the claimant's alleged safety reason is really just a disguise for a benefit of the employer excuse. He is in his petitioners' Why is it a disguise? He said he had to drive all this distance. His truck was overloaded with these extra pipes. He thought it was unsafe. Maybe it wasn't unsafe, but he thought it was. So he takes the pipes off so that he can go to the next job. I mean, that's like suggesting that if a truck driver speeds and his employer says you're not supposed to speed and he gets into an accident, he can't recover. That's nonsense. Well, he's still carrying out his employer's business. Well, Your Honor, respectfully, he's not. He is going in direct contravention to the tools provided, the rules in place, and the And here's where your analysis breaks down. You just kept on acknowledging earlier there was no written policy on this. In the case you cited, you said the employer directly told the claim and it was undisputed he couldn't do this. There's nothing that is tantamount to that in this record where he was told specifically the day before he couldn't remove the pipes, is there? That's correct, Justice Hudson. However, the courts of this State have held that implicit in the employment relationship is the understanding that employees do not misappropriate property from their employers. Now, that's only instructive. It's borrowed from a case of You keep using this word, misappropriate. If he was stealing, we'd agree with you. There's no evidence this man was stealing anything. Let me ask you this. What is the purpose behind this policy? It's an unwritten policy, apparently, for the employer to not have scrap at an employee's home. Is it for safety purposes? Certainly. Probably not, right? Well, there's a number of reasons, Your Honor. I believe, first and foremost, that the employer maintains an interest in having an account for his inventory. He maintains an interest in being able to verify accidents happen in accord with, you know, the policies they put in place. And in that regard, that is their interest that they have to protect. And furthermore, you know, the respondent or the employer submits that it's simply a cardinal rule that you don't take home your company's property and store it at your personal residence when there's no reason to do so. The Petitioner testified that he did not need to remove the pipe. There was no reason to remove the pipe for his upcoming job in Waterman, Illinois. He testified that he did it for, you know, this alleged safety reason, which he explained in the circuit court brief was in order to protect the employer from liability. Well, that's for the benefit of the employer, an excuse, and it should be ignored by this Court. Why? The commission believed him. He said he took the pipe off because on previous occasions pipe had come off the vehicle. And if the commission chooses to believe him, why can't they believe him? Again, that would go to custom and practice, Your Honor. And that's provided somebody buys into your notion that merely because he violated some rule that the employer has that he can't recover, which isn't the law, by the way. No, it's not. You're absolutely correct. It's based on reasonableness and foreseeability. And in this case, I think it's fundamental. It's axiomatic that an employer derives his expectations from his employees based upon the task assigned, the rules in place, and the tools provided. So when you have a situation where the claimant performs a task that's unnecessary to his upcoming job, when he ignores the tools provided by him or by his employer to carry out his job, which would be the straps, the security straps to the top of the vehicle, and when he violates what is an implicit or cardinal rule of employer-employee relationship, there's no expectation of that conduct. But what you're saying is you can't say it was something that was done unconnected with his job. This isn't some weekend frolic that he's going on to the lake and he takes off the pipes. He was going on a job that's not disputed, correct? Correct. All right. So Justice Offen says maybe he's wrong, but, you know, so what's the choice? What would the employer like the worker to do if he thinks that the vehicle and the amount of pipe is unsafe? He's supposed to then take off, and then you'll be alleging that he violated some other rule because he's driving the vehicle in an unsafe condition. What's he supposed to do? He's supposed to contact his employer, Your Honor, and ask permission to remove that company process. Is there somebody there at 6 o'clock in the morning? I don't know. But anyway, go ahead. Your Honor, beyond that, Your Honor, with regard to the safety excuse, which is really a disguise for the benefit of the employer, that was struck down in Brady v. Lewis Ruffalo and Sons. But again, as I mentioned earlier in Dietzen, it's not new to the courts of the state as it was presented in Dietzen, and also a case called Lumagi v. Industrial Commission. Now there, very similar to this case, there was a mine examiner who was injured when he was performing his job duties, and he was provided a cart and mule to transport himself from place to place within the mine. He decided on his own volition to go ahead and use an electric motor that was off limits. In the process of doing so, he was injured. Excuse me. Where was he going? To another part of the mine, Your Honor. To do what? To perform his duties. I think they have lunch. My memory serves me correctly. It was they have lunch. I believe he testified, Your Honor, that he was trying to speed up his job at hand. I mean, the court in that case denied compensation again over the claimant's argument that he was doing this for the benefit of the employer. Now, similar to this case, there was also testimony there by numerous witnesses that this was custom and practice for the mine examiners to use this material. The court ignored that. Similarly, there was also testimony that the employer knew of this policy and had acquiesced in it. Yet the court, based on one witness for the employer's testimony, which stated that they had no knowledge of it, the court denied compensation. I think, you know, you're going to run out of time before you hit traveling employee, and I don't think you're on the strongest point in your brief. Well, I'll quickly move to my third point, Your Honor. And we're only really challenging one aspect of the traveling employee doctrine here, and that is the claimant's contention that he relies upon his responsibility, which states this. The appellate court stated that where an employee, for its own benefit, provides its employee with the means of transportation to and from work, the transportation is considered to expand the in the course of element, while apparently providing a risk incidental to the exigencies of the employee that satisfied the arising out of element. Now, it is the employer's position that that statement has been taken out of context in an attempt to expand the protections of the Illinois Workers' Compensation Act. By attempting to remove the arising out of element of the causation analysis, the petitioner is, again, invoking the positional risk doctrine, which the Supreme Court struck down also in Brady v. Lewis, Ruffalo, and Sons. Therefore, the claimant must still establish that his injury arose out of and in the course of his employment, Your Honor. And the passage was taken out of context, and it was based upon two cases. First, Becker v. Industrial Commission. There are two elements that are not present here. First of all, the employer controlled the means of transportation, in that they  Furthermore, by doing so, the employer received a benefit, a quantifiable benefit, where he was able to employ inexpensive, young labor that would not have otherwise been available to him. The claimant also relies on Hindle v. Dillbeck in support of his contention that the provision of a vehicle or transportation by an employer to an employee expands the employee's range of employment and the attendant risks. Now, despite the claimant's direct citation of the case, the court simply does not state that. Well, can you cut to the chase? I mean, you were talking about somebody. There's no dispute. Is there that he took the van home? He's authorized to do that. Yes. Was he prohibited from having the van at home and then going to a job site? No, Your Honor. He's not. Okay. So why is he not? And he's in the course of preparing for the trip early in the morning. On the employee's business, there's no dispute about that. He was going to a job site, right? Certainly. Okay. So why is he not a traveling employee at that point? Well, for one, Your Honor, he's sitting in his driveway at the time of his injury performing a task that we've discussed was not incidental to his upcoming job. But set aside the issue of whether or not he should have been doing it. Certainly. The fact that it's on his driveway takes him out of the range of a traveling employee. Doesn't he have to prepare to take off? As far as starting your vehicle, Your Honor, I don't believe that's a risk that the rest of the citizens of Illinois are not exposed to. That being said, to expand the premises of an employee's job site and the risk attendant to it, there must be a benefit to the employer. In this case, there's no benefit to the employer by allowing, there's no not required, by allowing his employee to take the vehicle home at night. If anything, the benefit lies with. Counsel, your time is up. You'll have time on the clock. Absolutely. Thank you, Your Honor. Thank you. My name is Henry Schmidt. I represent the petitioner, Joseph Lippins, in this matter. The standard of review in this case is manifest weight of the evidence. The issue as to whether an injury arose out of and in the course of one's employment is a question of fact for the commission to decide, and its determination will not be disturbed unless it is against the manifest weight of the evidence. Could I interrupt you for a moment? I'd like to pick up where we left off with counsel in regards to the traveling employee. At the commission level, you drew a dissent in regards to whether or not this individual was a traveling employee. Why was that commissioner wrong? The arbitrator whose decision was adopted and affirmed by the commission did not specifically use the term traveling employee. The principle of law that was enunciated was if an employee, quote, and this is out of the Olson case initially, if an employee is required to travel and the employee is involved in reasonable services of an employer at an appropriate time and place, an injury that occurs will be considered to be in the course of employment. There's been several appellate court cases recently that have the Cox cases when I cited that I felt was important to cite as far as the respondent had not. And in that case, the court found that the injured employee was a traveling employee. I used that case partly, though, to, because of some language in the decision at page 546. However, an exception to this general rule exists wherein, as in this case, the employer for its own benefit provides the employee with means of transportation to and from work. Quote, in such situations, the transportation is considered to expand the in course of element while apparently providing the risk incidental to the exigencies of employment to satisfy the arising out of element. So the facts we have in this case is that an employer that's located in Moline, that's where its offices and that does business in a radius of 100 to 150 miles away, and this is a mechanical contractor, a large one, who has 15, 16 service tax pipe fitters. Each one of those journeymen pipe fitters, they assign a full-time service van to so they can have it at their There's no dispute that he was authorized, as counsel has acknowledged, to have the van at home. Nobody is disputing that he was doing something improper by having the van at home. I think there's two issues that you need to respond to. His first point is, notwithstanding that, he's in violation of company policies. This accident happened because he was in clear violation of a policy, he's claiming, that says you can't be unloading these things at your premises or at your home, A. And B, he's saying he hadn't really started the journey yet. So how do you respond to those two points? Well, when you provide the company vehicle, it's just like a tractor-truck driver in a truck yard. I mean, when he starts out in the morning, he's making a trip of an hour and a half, he's got to make sure that the vehicle is prepared and ready to go. Mr. Lippens testified that he went out shortly after 5 o'clock, started the vehicle up, there had been dew on the ground, started the windshield wipers, checked the front headlights, the rear headlights, the turn signals, and then decided, for safety reasons, he wasn't going to take this, the extra pipe, the unnecessary pipe, up to, you know, to an hour and a half up in the opposite direction of the company offices. And so I think he hadn't pulled out of his driveway yet, but he was working in his driveway to get the truck prepared for a safe trip. My argument is he's in the process of the traveling process. Yes. He's in the process of doing it. He can't go anywhere until he checks the vehicle and starts it. Correct. What about his argument that he was in violation of the company's policy? What do you make of that? Well, first of all, that's a question of fact that's already been decided. Mr. Lippens testified that he wasn't aware of any company policy and he wasn't aware of any union policy that prohibited him from taking the pipe off the truck or from doing anything that he decided to do. Mr. Cox, who was the vice president of the company that testified last, said he didn't have a copy of the company, you know, the written company handbook, and he wasn't sure what it said anyway. And then under cross-examination, it was kind of leading, well, wasn't this in violation of union policy? No, Your Honor. I'm saying it was a question of fact based on his testimony that he was in violation of the company's policy,    that there was no violation of company policy, but the only cases, the only case really, the only three cases that they could have hung their hat on would have been Saunders, Bessides, Lumachi, Cole, and Dietzen. In all three of those cases, an employee willfully violated a known safety rule in the, it, not a kind of ephemeral policy. This wasn't a safety rule. Pardon me? This wasn't a safety rule. No. This was to keep employees from misappropriating material. And there's no written thing in the record. My client says he never heard of anything like that from the company. Is there any suggestion in the record that he was not found credible? That what? That he was not found credible? No, Your Honor. Okay. It wasn't. In fact, Mr. Richard Rickhardt, both of his employer supervisors says this guy was an outstanding worker. They'd never had any problems with him. They never had criticized him or disciplined him. Well, that has nothing to do with credibility. Well, it shows so. He makes a statement, I believe, saying I'm not aware that there was any policy. Yes, sir. Okay. So not, is it credibility finding? Is he being truthful when he makes that statement or is he not? And there's no evidence to suggest that there was question as to his credibility? No. So your argument is you can't violate a policy that you don't know about? I don't think there was any violation of policy. The defendant or the respondent didn't really prove it. It was kind of something they mentioned. Well, let's say there is a policy. Okay. But it's established by the employer there is a policy. And it's believed. The employers believe that there is a policy. Okay. Or that there's documentation. Does that make a difference if the employee says I was not aware of the policy and that employee's belief? I think it would have to be so significant that it would totally take him out of the sphere of employment. And what he was doing here was in furtherance of an incidental to and for the employer's benefit. So is your position that even if he was aware of the policy, it's totally irrelevant? I think in this case, even if there was a policy and even if he was aware of it, which factually I don't think. I understand. You know, that it wouldn't have taken him outside the scope or been a deviation from his employment that would have prevented his recovery in this case. Any more than the trucker who speeds when he's not supposed to? Pardon me? Any more than the trucker who speeds when he's not supposed to and gets into an accident? I think that's right. His one supervisor indicated he was asked, I asked him about, oh, he was asked if this pipe that was being removed had any value. And he said copper pipe would be worth, a 21-foot section would weigh about five pounds and be worth 50 cents a pound. So he answered that question, the misappropriation question, very loudly in the, in his testimony. I'm sorry. Have I answered your question? Yes. In your opinion, at what point in time, assuming he is a traveling employee, is he actually engaged in the act of traveling? We had a man yesterday say not until he puts the car in drive. Do you subscribe to that one? The commission didn't specifically find him to be a traveling employee. They used the full did it arise out of in the course of analysis. Yeah, but they used the definition of a traveling employee. So what's the difference? They didn't say it. What's your opinion? I mean, what's your opinion? When does he become a traveler? Well, if employment is required and they give him the vehicle and he's preparing it, then I think he's definitely in the course of his work and the injury arises out of his work. As soon as he starts preparing the truck. It doesn't matter if he cleaned snow off the windshield or off the roof or changed the tire or took unnecessary material that he thought would be a safety hazard off of it. So in other words, the vehicle doesn't have to be in motion, right? Correct. He was preparing for the trip and getting ready to go. And he said his testimony was that he did this every, his testimony was, all right, so describe what you were doing occurred and what occurred. This is at page 10 and A25. I got out and started the truck and got it warmed up. It was kind of dewy that morning and the temperature had dropped, I don't know, 15 degrees or something during the night there and it was just a dewy morning. So I went out, started up the truck, got wipers going, made sure, you know, the lights are on, we have to check the trucks every morning, check for brake lights or headlights out or turn signals or anything, and I was checking out the truck. And that's his testimony. So what we're saying, it's reasonable and foreseeable that he would be doing that. Yes, sir. Now, I think the opposing counsel says that may be all well and good that that's reasonable and foreseeable that he's preparing the truck and doing these types of things, but it wasn't reasonable and foreseeable that he would be up on the bumper taking off pipe in violation of an employer's company's rule. And, you know, the court decided it was, I mean, the commission decided it was reasonable what he was doing at the time. And they, it's a question of fact and it's not against the manifest way to the evidence. Reasonable goes to the manner, it seems to me, in which you're engaged in the activity. Foreseeable is whether it's even foreseeable that you'd be engaging in that activity. And the opposing counsel says it should not even be foreseeable by an employer or held against an employer that they would be taking pipe off, that they're not supposed to take off. His testimony was it was customary and reasonable in the trade not to take unnecessary piping on the road if you're to a job that it wasn't needed on that was in the opposite direction of where the company offices and shop was. So, anyway, sir. Oh, they've made a big deal, though, about driveway. And, you know, I think I've answered and given our best position with respect to that. Pardon me? I don't think you need to get hung up on that issue. Clearly, counsel's acknowledged he's authorized to have the vehicle there on the property. Thank you. I believe your time is up. Thank you, counsel. Thank you, Your Honor. Counsel, you may reply. Your Honor, just a couple quick points on rebuttal. In response to, I'm sorry, I couldn't see either Justice Turner or Justice Hoffman's question regarding when the traveling when the expanded protections of the traveling employee adoption should commence. It is the Respondent's position that they should commence the second that the traveling employee begins his journey, puts the car in drive. That's correct, because that's the time at which he's no longer exposed to the same attendant risks that everyone else who goes to work every morning is exposed to. At that time, he's no longer in his vehicle. Every single person in the State. You've got to put it in drive. You've got to put it in drive. Yes, Your Honor. Is there a case that says that?  That's what the Respondent's position is. I don't think there's going to be one either. I think you're right. Well, in drive, so in other words, so let me understand this. Most of us have to put it in reverse first. Your Honor, I apologize. I did not mean such a technical. I meant in the process of traveling to his next job site. He'd have to be outside of his driveway. He'd have to be finished preparing his vehicle as every other working man or woman in the State does before they go to work. That is when the expanded risks begin to come at the employee, for lack of a better word. And one other point, Your Honor, is that this was a traveling employee doctrine case. It still has to obviously arise out of it in the course of employment. But Commissioner Lindsay's dissent clearly established that this was a traveling employee case. He states that the Commission found that way and decided on those grounds. That's all, Your Honor. Thank you. Thank you, Counsel Bowles, for your arguments. This matter will be taken under advisement. Written disposition shall issue.